IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MADSTAD ENGINEERING, INC., a
Florida corporation, and MARK
STADNYK, an individual,

                               **Plaintiffs,**

v.                                                  **CASE NO.:**
                                                    **Injunctive Relief Sought**

U.S. PATENT AND TRADEMARK
OFFICE, DAVID KAPPOS, in his official
capacity as Director of U.S. PATENT AND
TRADEMARK OFFICE, and THE
UNITED STATES OF AMERICA,

                             **Defendants.**

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

    1.      Plaintiffs, Mark Stadnyk ("Stadnyk") and MadStad Engineering, Inc.

("MadStad"), by and through undersigned counsel, bring this constitutional challenge to the

America Invents Act, 125 Stat. 284 ("AIA"), against Defendants, the U.S. Patent and

Trademark Office ("PTO"), its Director, David Kappos ("Kappos"), in his official capacity,

and The United States of America.

## INTRODUCTION

    2.      The AIA, signed into law by the President on September 16, 2011, is a radical

change that threatens the U.S. economy and American jobs.  It discards the "First-to-Invent"

patent system crafted by the Constitution's founders – a system that led the world in science,

technology, and industry for more than two centuries – and substitutes a failed "First-to-File" system.

3.    Traditionally, the U.S. patent system has awarded patents to the first person to invent a new discovery. The AIA changes this long-settled approach. Although the AIA is labeled as a "First-Inventor-to-File" system, that label is a smokescreen. Under the AIA, the patent will be awarded to the person who is first to file a patent application, regardless of whether the applicant was the actual first inventor of the technology in question. In fact, the AIA removes from the "conditions of patentability" of Section 102 of the Patent Act (and thereby from the conditions of patent validity) the requirement that the named inventor actually invented the claimed subject matter.

4.    The new "First-to-File" system violates the Intellectual Property Clause, Article I, Section 8, Clause 8 of the Constitution, which provides Congress with the power "[T]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

5.    The Intellectual Property Clause prohibits Congress from vesting patents in anyone but actual "Inventors" of genuine "Discoveries." Congress is not authorized to award patents to the winners of the race to file at the PTO.

6.    The new "First-to-File" approach will discourage innovation. Countries using a first-to-file approach have experienced a relative decrease in the number of inventions. One reason is that individual inventors, start-ups, small businesses, and research organizations simply lack the resources to compete with big corporations in the race to file patent applications with the PTO. They will be unable to afford the expense of the multiple

applications that are necessary to protect inventions, update a pending patent, and attract new sponsors and researchers.

7.     The AIA is special interest legislation, pure and simple.  It favors large corporations and multinationals, while discriminating against the small inventors – individuals, start-ups, universities, and independent research institutes – that have always formed the backbone of U.S. innovation.  If the Act had been law in the Twentieth Century, the Wright Brothers would have been denied a patent for the airplane, and the founders of Hewlett-Packard would have been denied a patent for the variable frequency oscillator.  Not surprisingly, the AIA was passed over the vehement objections of entrepreneurs, venture capitalists, and patent law experts.

8.     The core issue facing the U.S. patent system is the mounting backlog of over 700,000 patent applications at the PTO and the inexcusable delay in processing them.  It now takes three years, on average, for a patent application to be processed.  This situation is intolerable, but the AIA does nothing to fix it.  In fact, the new Act will only make the problem worse.  It contains a host of additional administrative review procedures that will further burden the PTO.  The Act will also trigger a flood of hastily drafted, poorly explained patent applications, which will only serve to increase the administrative backlog and foster additional patent litigation.

## JURISDICTION

9.     This action arises under the Constitution and laws of the United States and presents a federal question within the subject-matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

## VENUE

10.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e).

## DECLARATORY AND INJUNCTIVE RELIEF

11.    This is an action for declaratory and injunctive relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702, 703, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court is also authorized to grant declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested by the Plaintiffs pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

12.    Plaintiff Stadnyk is an inventor and resident of the State of Florida.

13.    Plaintiff MadStad is a corporation incorporated in the state of Florida on December 10, 2008. Its principal place of business is located in Pasco County.

14.    Defendant PTO is an agency of the United States Government, with its principal office in Alexandria, Virginia.

15.    Defendant Kappos, sued in his official capacity, is Director of the PTO.

16.    Defendant The United States of America is a proper defendant in this action pursuant to 5 U.S.C. § 702.

## BACKGROUND

17.    The AIA creates an unprecedented "First-to-File" standard instead of the traditional "First-to-Invent" standard of U.S. patent law. Section 3 of the AIA deletes the requirement in Section 102 of the Patent Act, 35 U.S.C. § 102 (which sets forth conditions of

patentability), that the patent holder be the actual inventor of the discovery in question. The AIA deletes previous Section 102(f), which formerly provided: "A person shall be entitled to a patent unless ... he did not himself invent the subject matter sought to be patented." Thus, under the AIA, being an inventor is not a condition of patentability under Section 102, nor a requirement of patent validity under Section 282 of the Patent Act.

18.    Section 3 of the AIA substantially revises the Patent Act by deleting or rewriting numerous references to priority of inventorship in the Patent Act. The AIA also eliminates an entire subsection in the Patent Act that sets forth the substantive and procedural requirements for ensuring that only the first inventor receives a patent (35 U.S.C. §102(g)).

19.    The AIA contains a provision requiring an oath by a patent applicant to the effect that a person believes himself or herself to be an inventor. But this provision is not effective or sufficient to avoid the reality that the AIA authorizes granting the exclusive rights to non-inventors. Under the AIA, there is no effective statutory requirement that the applicant be an "inventor" for a patent to be valid. The AIA awards patents not to the actual inventors of genuine discoveries but rather to the first filers to invoke the administrative process of the PTO.

20.    The new standard in the AIA is unconstitutional. Article I, Section 8, Clause 8 of the Constitution provides Congress with the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." At the time of the Constitution's framing, the common understanding of an "inventor" was the same as it is today: "one who produces something new; a devisor of something not known before." Similarly, a "discoverer" was

defined as "one who finds anything unknown before." Only the first inventor can discover something "not known before." A second "inventor" is an oxymoron; that person merely rediscovers that which was already discovered by the first inventor. Thomas Jefferson, James Madison, and John Marshall all shared this understanding.

21.    Early Acts of Congress are often considered to be highly probative of constitutional intent, because of the 55 delegates at the Convention, 19 later served as Senators and 13 as Representatives. The Patent Act of 1790, enacted in the second session of the First Congress, authorized the grant of a patent to one having "invented or discovered any useful art . . . not before known or used," and provided for repeal of a patent "if it shall appear that the patentee was not the first and true inventor."

22.    Similarly, the Patent Act of 1793 authorized the issuance of a patent on the basis of a petition demonstrating, not that the applicant was the first filer, but rather that the applicant had "invented any new and useful art, machine, manufacture or composition . . . not known or used before the application." The law permitted a defendant to plead for a declaration of invalidity if "the thing, thus secured by patent, was not originally discovered by the patentee."

23.    First-to-file was also rejected by Thomas Jefferson, one of the members of the original patent board, in an early celebrated case involving four claimants to a steamboat patent.

24.    The history is clear. In fact, in a decision issued June 6, 2011, the Supreme Court reaffirmed that "[s]ince 1790, the patent law has operated on the premise that rights in an invention belong to the inventor." "[A]n inventor owns the product of [his or her] original

thought." *Board of Trustees of the Leland Standford Junior University v. Roche Molecular Systems, Inc.*, 131 S.Ct. 2188 (2011).

25.    A First-to-File system thus violates the text and original understanding of the Constitution. It also violates one of the key purposes behind the Intellectual Property Clause, which was to avoid the abusive system of royally-granted monopolies that had emerged under the English Crown. First-to-File would replicate the British scheme of making patent rights dependent on government-granted privileges, rather than on the ingenuity and hard work that the framers believed were the basis of patent rights. Allowing the government to redefine an "inventor" to be the person officially designated as such, on the basis of a procedural filing with the PTO, is exactly the kind of system the framers rejected.

26.    Hence, for 220 years, the U.S. patent system has successfully operated according to the Constitution's premise that only the first actual inventor of a discovery is entitled to a patent. The Constitution does not grant Congress the power to authorize the grant of patents to first-filers who do not meet the Article I definition of inventors of discoveries. The Supreme Court has recognized that the constitutional language in the Patent Clause "is both a grant of power and a limitation." *Graham v. John Deere Co.*, 383 U.S. 1, 5 (1966). As Justice Douglas observed, "Congress does not have free rein . . . to decide that patents should be easily or freely given." *Great A. & Pac. Tea Co. v. Supermarket Equip. Co.*, 340 U.S. 147, 154 (1950) (concurring opinion).

27.    The Intellectual Property Clause is unique in that it is the only one of the Enumerated Powers where the drafters mandated a specific mode of accomplishing the particular authority granted, i.e., "by securing exclusive rights for limited times to authors

and inventors in their respective writings and discoveries." The U.S. patent system is based on ingenuity and hard work, not hiring lawyers to perform administrative filings or ministerial acts.

## PLAINTIFFS' STANDING

28.     Plaintiff Stadnyk is a patent holder and inventor whose property rights are directly injured and impaired by the unconstitutional provisions of the AIA.  Plaintiff Stadnyk holds three patents and has numerous inventions at different stages of development. Some of Stadnyk's inventions are close to patentability but other ideas require additional research, development, and testing.

29.     Plaintiffs Stadnyk and MadStad face increased costs and burdens from having to operate in a First-to-File environment, including the burden of maintaining heightened secrecy around potential inventions until a patent application is filed.  Although the First-to-File provisions of the AIA begin to apply to patent applications filed on March 16, 2013, the provisions already cause real and tangible injury to Plaintiffs.

30.     Much of today's intellectual property ("IP") is created on or stored on computers, virtually all of which are connected to the internet for reasons of research, communication and collaboration. Since the AIA no longer concerns itself with who actually invented an invention prior to filing, the new law makes it attractive and profitable for computer hackers to steal IP and file it as their own (or to sell it to the highest bidder). That means that inventors must invest in greater protection and security for one's computers and networks, placing increased financial and technical burdens on inventors, most of whom are not information technology (IT) specialists.

31.     Because the new law increases the threat of IP theft, inventors and entrepreneurs must invest substantially to protect their computers. This includes hardware firewalls, software firewalls, encryption software, internal storage systems, and the IT expertise to install and manage all of this which usually means hiring an outside company or professional. For small companies this is a substantial cost, and for individual inventors and entrepreneurs even more so.

32.     Since the enactment of the AIA, Plaintiffs have been forced to invest approximately $3,500.00 in additional computer security measures.

33.     In addition, the threat of IP theft burdens inventors and entrepreneurs to develop their inventions in private if possible, which involves a substantial investment in equipment, facilities and engineering expertise. Most small-entity inventors like Plaintiffs do not have the resources or capacity to produce prototypes, manufacture samples, nor the facilities to execute testing and development. Sending IP out into the public domain or to outside vendors for such services exposes it to theft, and with no safeguards to successfully defend against such theft under the AIA, the only secure option is to develop and test inventions in-house and on private property as much as possible. This requires the purchase of manufacturing equipment, test equipment, leasing of private property, and either hiring personnel to run it all or substantially investing in the training and expertise necessary to perform all of these tasks.

34.     Since the enactment of the AIA, Plaintiffs have been forced to invest approximately $105,000 in additional equipment for product development and testing, as well as $840.00 per month investment in expanded facilities for same. This is only a partial

investment which does not come anywhere near providing Plaintiffs with full capabilities to develop and test new IP in-house.

35.    Plaintiffs have suffered further injury from the challenged provisions of the AIA because Plaintiffs face burdens in the form of increased time and effort and higher costs relating to patent applications.

36.    Under the prior first-to-invent system, Plaintiffs were able to diligently proceed to reduce their inventions to practice, without having to rush to file a patent application.    Instead, Plaintiffs could wait until inventions were fully developed and performed satisfactorily.  Delaying filing until the invention was fully developed allowed Plaintiffs to more fully describe inventions, thereby improving chances of obtaining a patent.

37.    The First-to-File standard of the AIA eliminates the ability of small-entity inventors like Plaintiffs to delay filing an application until their inventions are more fully developed.  The AIA creates the need to file a provisional patent application (PPA) and full patent application for an invention as soon as possible.

38.    Patent applications are burdensome and expensive.  They cost thousands of dollars per invention in attorneys' fees and many thousands of dollars in time of a company's key personnel.  Each patent application costs approximately $10,000.00 for a minimally complex product. Small inventors like Plaintiffs are particularly harmed by such burdens.

39.    The availability of a PPA does not eliminate the burden on Plaintiffs.  A PPA gives an inventor 12 months to develop his or her invention without fear of IP theft. The problem is that many inventions take more than 12 months to develop.   Small-entity inventors like Plaintiffs lack sufficient funds and resources to fully produce their own in-

house prototypes or to expeditiously perform their own in-house product testing and engineering. Small-entity inventors like Plaintiffs must hire outside companies to fulfill these rolls and to do so in the short time frame of 12 months. Often this means paying hefty expedite fees to have parts or products prototyped quickly. Even if that occurs, there is no guarantee that a given product can complete testing within the remaining time, and if that is the case then the inventor must file a full patent application without knowing if the product claims have been fully vetted or verified.

40.     If the 12-month time limit for PPAs expires and the inventor has not completed its prototyping or testing sufficiently (and this is very likely for many products), the full patent application must be filed anyway in order to preserve the claim to the original IP. Should continued testing reveal new claims that were not part of the first filing, or should the inventor need to change the product slightly in a way that was not documented in the initial filing, it would necessitate a new filing to secure the rights to the new claims. This places additional financial burdens in the form of multiple patent filings for the same product. For small companies and individual inventors, this cost of multiple filings is a substantial burden.

41.     Plaintiffs have suffered further injury from the challenged provisions of the AIA because Plaintiffs have suffered reduced access to potential investors and business partners due to the new law. Plaintiffs face additional burdens in marketing ideas to potential investors and business partners under the AIA. Plaintiffs are deterred from sharing ideas and inventions with potential investors and business partners because of the risk that another party will "scoop" ideas and inventions through IP theft or other means and be the first to file

a patent application with the PTO. Such IP theft is virtually impossible to defend under the AIA, therefore from the perspective of potential investors and business partners, Plaintiffs' IP is less valuable because, even though Plaintiffs may be the actual inventors, the AIA awards patents not to the actual inventor but to the first party to file. Accordingly, Plaintiffs have suffered lost business opportunities as a result of the AIA.

### IRREPARABLE INJURY

42.     The AIA will cause irreparable harm to Plaintiffs' businesses, property, and constitutional rights. Plaintiffs lack any adequate remedy at law for their injury.

### COUNT I
### (The First-to-File Standard is Unconstitutional)

43.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42.

44.     The First-to-File standard enacted in Section 3 of the AIA is unconstitutional because it violates the text, structure, history and purpose of the Intellectual Property Clause of the Constitution, Article I, Section 8, Clause 8.

### COUNT II
### (Severability)

45.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 44.

46.     The AIA does not contain a severability clause.

47.     The First-to-File standard enacted in Section 3 is central to the AIA. The definition of what is patentable is not a peripheral issue; rather, it is fundamental to the operation of the Patent Act. Moreover, Section 3 of AIA amends many different sections of

the Patent Act.  The First-to-File standard is interwoven throughout the changes made by the AIA.

48.     Senator Leahy, the leading sponsor of the AIA, released a statement in March 2011 stating: "First-inventor-to-file is a necessary component of this legislation . . . This amendment [to strike first to file] would gut the reforms intended by the bill and be a poison pill to these legislative reform efforts. Supporters of the legislation, ranging from high-tech and life sciences companies, to universities and small businesses, place such a high importance on the transition to first-inventor-to-file system that many of them – including those who reside in most of our states -- will not support a bill without those provisions. A vote in support of this amendment, which would strike first-inventor-to-file provision, is effectively a vote against the heart of the America Invents Act."

49.     Congress would not have adopted the AIA, at least not in anything resembling its present form, absent the First-to-File provision.  Hence, the First-to-File standard enacted in Section 3 of the AIA is non-severable from the remainder of the AIA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A.  To issue a preliminary and permanent injunction restraining Defendants, their employees, officers, and agents from enforcing the AIA against the Plaintiffs.

B.  To enter judgment declaring that the First-to-File standard enacted in Section 3 of the AIA is unconstitutional and that it is non-severable from the remainder of the AIA.

C.  To grant such other and further relief as this Court should find just and proper, including attorneys' fees and costs.

Dated: July 18, 2012

Respectfully submitted,

Michele Leo Hintson, Esquire
Florida Bar No. 0604941
Jaime Austrich, Esquire
Florida Bar No. 084565
Attorneys For Plaintiffs,
MadStad Engineering, Inc., and Mark Stadnyk
**Shumaker, Loop & Kendrick, LLP**
101 East Kennedy Blvd., Suite 2800
Tampa, FL 33602
Telephone: (813) 229-7600
Fax: (813) 229-1660
Email: MHintson@slk-law.com
Email: JAustrich@slk-law.com

**TRIAL COUNSEL**   Jonathan S. Massey, Esq.*
D.C. Bar No.:457593
Leonard A. Gail, Esq.*
ARDC No.: 6306809
Matthew J. Reedy, Esq.
ARDC No.: 457593
Attorneys For Plaintiffs,
MadStad Engineering, Inc., and Mark Stadnyk
**Massey & Gail LLP**
1325 G St., NW, Suite 500
Washington, DC 20005
Telephone: (202) 652-4511
Fax: (312) 379-0467
Email: Jmassey@masseygail.com
Email: Lgail@masseygail.com
Email: Mreedy@masseygail.com

* Motions for Pro Hac Vice Admission, and required corresponding documents, shall be filed upon assignment of a case number in this proceeding.

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MADSTAD ENGINEERING, INC., a Florida Corporation, and MARK STADNYK, an individual, | U.S. PATENT AND TRADEMARK OFFICE, DAVID KAPPOS, in his official capacity as Director of U.S. PATENT AND TRADEMARK OFFICE, and THE UNITED STATES OF AMERICA, |

**(b)** County of Residence of First Listed Plaintiff   Pasco
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michele Leo Hintson, Esq., Shumaker, Loop & Kendrick, LLP, 101 E. Kennedy Blvd., Suite 2800, Tampa, FL 33602 (813) 227-2338

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff
☐ 3   Federal Question *(U.S. Government Not a Party)*
☒ 2   U.S. Government Defendant
☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from another district *(specify)*
☐ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 U.S.C. §§702, 703; 28 U.S.C. §§2201, 2202
Brief description of cause:
Constitutional challenge to 125 Stat. 284, America Invents Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $   Injunction & Declaratory Relief
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE     DOCKET NUMBER

DATE
07/18/2012

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE