IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MADSTAD ENGINEERING, INC.,
a Florida corporation, and
MARK STADNYK, an individual,

Plaintiffs,

v.

U.S. PATENT AND TRADEMARK
OFFICE, DAVID KAPPOS, in his official
capacity as Director of U.S. PATENT
AND TRADEMARK OFFICE, and the
UNITED STATES OF AMERICA,

Defendants.

No. 8:12-cv-01589-SDM-MAP

**DISPOSITIVE MOTION**

**DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................ 3

STANDARD OF REVIEW .................................................................................... 5

ARGUMENT ......................................................................................................... 7

   I.   PLAINTIFFS LACK STANDING TO CHALLENGE THE AIA'S FIRST-
       INVENTOR-TO-FILE PROVISIONS. .......................................................... 7

       A.   The Possible Threat of Invention Theft Is Not a Concrete and Imminent Injury
           Traceable to the AIA's First-Inventor-To-File Provisions. ................................... 8

       B.   Plaintiffs' Voluntary Decision to Spend Resources in Anticipation of a Future
           Race to the Patent Office Is Not a Concrete and Imminent Injury Traceable to
           the AIA's First-Inventor-To-File Provisions. ...................................................... 12

   II.  THIS COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFFS'
       CLAIMS ARE UNRIPE FOR REVIEW .................................................... 15

   III.  THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR
        FAILURE TO STATE A CLAIM. ............................................................. 16

       A.   Plaintiffs' Facial Challenge to the AIA's First-Inventor-To-File Provisions
           Fails Because They Cannot Show That The AIA Will Operate
           Unconstitutionally In Most Cases. ...................................................................... 17

       B.   The First-Inventor-To-File Provisions of the AIA Are Constitutional in All
           Cases…. ............................................................................................................. 18

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

## CONSTITUTIONAL PROVISIONS

U.S. Const., art. I, § 8, cl. 8.................................................................................... 1, 5, 18

## CASES

*Alexander Milburn Co. v. Davis-Bournonville Co.*,
    270 U.S. 390 (1926)................................................................................................ 21

*Allen v. Wright*,
    468 U.S. 737 (1984)................................................................................................. 7

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
    543 F.3d 657 (Fed. Cir. 2008) ............................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................. 6

*Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys.*,
    131 S. Ct. 2188 (2011) .......................................................................................... 19

*Bedford v. Hunt*,
    3 F. Cas. 37 (C.C.D. Mass. 1817) ......................................................................... 24

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)................................................................................................. 6

*Blanchette v. Connecticut Gen. Ins. Corps.*,
    419 U.S. 102 (1974)............................................................................................... 16

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)............................................................................................... 22

*Brunswick Corp. v. United States*,
    34 Fed. Cl. 532 (Fed. Cl. 1995) ............................................................................ 24

*Citizens United v. FEC*,
    130 S. Ct. 876 (2010).............................................................................................. 8

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)................................................................................................. 13

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ............................................................................ 10

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003)............................................................................................... 19

*Evans v. Eaton*,
    16 U.S. (3 Wheat.) 454 (1818)............................................................................... 24

*Figueroa v. United States*,
    466 F.3d 1023 (Fed. Cir. 2006) ............................................................................ 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) .................................................................................... 7

*Gayler v. Wilder,*
51 U.S. (10 How.) 477 (1850) ............................................................. 21, 23

*GeorgiaCarry.Org, Inc. v. Georgia,*
687 F.3d 1244 (11th Cir. 2012) ................................................................ 18

*Graham v. John Deere Co. of Kansas City,*
383 U.S. 1 (1966) ............................................................................... passim

*Grant v. Raymond,*
31 U.S. (6 Pet.) 218 (1832) ....................................................................... 22

*Janklow v. Planned Parenthood, Sioux Falls Clinic,*
517 U.S. 1174 (1996) ............................................................................... 17

*Kendall v. Winsor,*
62 U.S. (21 How.) 322 (1858) ......................................................... 21, 22, 23

*Kimberly-Clark Corp. v. Johnson & Johnson,*
745 F.2d 1437 (Fed Cir. 1984) ................................................................... 4

*Koziara v. City of Casselberry,*
392 F.3d 1302 (11th Cir. 2004) ................................................................ 11

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................................... passim

*Mason v. Hepburn,*
13 App. D.C. 86 (D.C. Cir. 1898) .............................................................. 23

*Mayo Collab. Servs. v. Prometheus Labs., Inc.,*
132 S. Ct. 1289 (2012) ............................................................................. 10

*McClurg v. Kingsland,*
42 U.S. (1 How.) 202 (1843) ............................................................... 18, 20

*McConnell v. FEC,*
540 U.S. 93 (2003) ........................................................................ 8, 12, 14

*Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n,*
226 F.3d 1226 (11th Cir. 2000) ............................................................ 7, 11

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,*
538 U.S. 803 (2003) ................................................................................. 15

*OddzOn Prods., Inc. v. Just Toys, Inc.,*
122 F.3d 1396 (Fed. Cir. 1997) ................................................................. 4

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
523 U.S. 726 (1998) ................................................................................. 16

*Pennock v. Dialogue,*
27 U.S. (2 Pet.) 1 (1829) ..................................................................... 22, 24

*Pub. Serv. Comm'n v. Wycoff Co.*,
    344 U.S. 237 (1952) ............................................................................ 15

*Renne v. Geary*,
    501 U.S. 312 (1991) .............................................................................. 6

*Scarfo v. Ginsberg*,
    175 F.3d 957 (11th Cir. 1999) ............................................................. 6

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ................................................................................ 7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................ 21

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................... 5, 6

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................ 15

*Toilet Goods Ass'n v. Gardner*,
    387 U.S. 158 (1967) ............................................................................ 16

*United States v. Salerno*,
    481 U.S. 739 (1987) ............................................................................ 17

*United States v. Stevens*,
    130 S. Ct. 1577 (2010) ....................................................................... 17

*Warth v. Seldin*,
    422 U.S. 490 (1975) .............................................................................. 7

*Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*,
    143 U.S. 275 (1892) ............................................................................ 23

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ......................................................................... 7, 11

*Young v. Dworkin*,
    489 F.2d 1277 (C.C.P.A. 1974) ........................................................ 23

## STATUTES AND REGULATIONS

28 U.S.C. §§ 2201-2202 ............................................................................ 5

35 U.S.C. § 101 ............................................................................... passim

35 U.S.C. § 102 ............................................................... 4, 9, 10, 24

35 U.S.C. § 103 ......................................................................... 10

35 U.S.C. § 135 ........................................................................... 4

35 U.S.C. § 282 ..................................................................... 9, 10

5 U.S.C. § 702 ............................................................................. 5

5 U.S.C. § 703............................................................................................................ 5

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(1)............................................................................................................. 5

Rule 12(b)(6)............................................................................................................. 6

## LEGISLATIVE MATERIALS

157 Cong. Rec. H4480-01 (daily ed. June 23, 2011)......................................... 14

H.R. Rep. No. 112-98, pt. 1, (2011).................................................................... 3

## SECONDARY SOURCES

Donald R. Dunner, *First to File:  Should Our Interference System Be Abolished?*, 68 J.
    Pat. & Trademark Off. Soc'y 561, 561 (1986) ............................................. 14

Joe Matal, *A Guide To The Legislative History of the America Invents Act* (pts. 1 & 2), 21
    Fed. Cir. B.J. 435 (2012) .............................................................................. 3

Max Stul Oppenheimer, *Harmonization Through Condemnation:  Is New London the Key
    to World Patent Harmony?*, 40 Vand. J. Trasnat'l L. 445, 466 (2007) ...................... 14

Press Release, The White House, President Obama Signs America Invents Act,
    Overhauling the Patent System to Stimulate Economic Growth, and Announces New
    Steps to Help Entrepreneurs Create Jobs...................................................... 1

USPTO, *Process Production Report:  Final Report, FY2011*, http://www.uspto.gov/ip/
    boards/bpai/stats/process/fy2011_sep_b.pdf (last visited Sept. 18, 2012) ................... 14

USPTO, *U.S. Patent Statistics Chart:  Calendar Years 1963-2011*, http://www.uspto.gov/
    web/offices/ac/ido/oeip/taf/us_stat.htm (last visited Sept. 18, 2012) ......................... 13

## <u>INTRODUCTION</u>

The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), represents the most significant patent reform since 1952.[1]  Among many other important changes, the AIA establishes a "first-inventor-to-file" patent system, under which the first person who files a patent application for a given invention, provided he himself independently invented it, is generally entitled to the patent.  *See* 35 U.S.C. § 101 (restricting the grant of patents to those who "invent[]"); AIA, sec. 3, §§ 101(i), 102(a), 125 Stat. at 285-86.  Congress moved to a first-inventor-to-file system in order to provide an objective and easy way to determine a patent's priority date; reduce the costs of patent disputes through the use of an objective priority date; and make the U.S. patent system more compatible with those in other industrialized countries, many of which operate under a first-to-file system.

Plaintiffs seek to overturn the AIA on the grounds that its first-inventor-to-file provisions violate the Constitution's Patent Clause.  This Clause provides Congress with the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const., art. I, § 8, cl. 8.  But before this Court can reach the merits of this challenge, Plaintiffs must establish that there is subject matter jurisdiction, as required by Article III of the Constitution.  Plaintiffs come nowhere close to meeting their burden.  First, Plaintiffs cannot establish standing because they have failed to allege an injury in fact that is concrete,

---

[1] *See* Press Release, The White House, President Obama Signs America Invents Act, Overhauling the Patent System to Stimulate Economic Growth, and Announces New Steps to Help Entrepreneurs Create Jobs (Sept. 16, 2011), http://www.whitehouse.gov/the-press-office/2011/09/16/president-obama-signs-america-invents-act-overhauling-patent-system-stim.

particularized, actual, and imminent.  Their alleged injuries—the possibility that their inventions may be stolen in the future and their voluntary decision to spend resources to ensure they do not lose a future race to the patent office—are entirely speculative and contingent on events that may never occur.  These injuries are also not traceable to the AIA's first-inventor-to-file provisions.  Plaintiffs therefore lack standing to bring their claims.  Second, because Plaintiffs are attempting to challenge statutory provisions that do not take effect until March 2013, *see* AIA, sec. 3(n), 125 Stat at. 293, and because they do not allege that they face the imminent prospect of losing a race to the patent office to a second independent inventor, Plaintiffs' claims are not ripe for adjudication.

But even if Plaintiffs could surmount these jurisdictional barriers, their claims must be dismissed because they have failed to state a claim upon which relief can be granted.  As an initial matter, because Plaintiffs are bringing a facial challenge to the AIA, they have the heavy burden of showing that the statute will operate unconstitutionally in a large fraction of cases.  They have not and cannot meet that requirement.  Plaintiffs' constitutional claim rests on the dubious factual assumption that two independent inventors often will create the same invention and that the second inventor often will file the patent application before the first inventor.  Nothing in their Complaint, however, suggests that these events will occur in a large fraction of cases, so Plaintiffs' facial challenge must fail.

Plaintiffs also have failed to state a claim because the AIA is constitutional in all cases. The AIA restricts the grant of patents to inventors and provides robust protections against "derivation" (the patenting of a stolen invention).  Congress, moreover, has the authority under the Patent Clause to establish conditions and tests for patentability, and

Congress acted well within that authority in establishing the condition that the effective filing date shall determine priority of invention when two inventors claim the same discovery. Plaintiffs may disagree as a policy matter with the reforms Congress adopted, but that does not give rise to a constitutional claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.      America Invents Act**

The AIA was signed into law on September 16, 2011.  Several sections went into effect upon enactment of the law.[2]  Several others recently went into effect upon the one-year anniversary of the law, on September 16, 2012.[3]  The provisions central to Plaintiffs' challenge, specifically those related to the "first-inventor-to-file" system, will go into effect on March 16, 2013.  AIA, sec. 3(n), 125 Stat. at 293

The change to a first-inventor-to-file regime is designed to achieve several important aims, including providing an objective and easy way to establish an inventor's priority date and reducing the costs of patent disputes by using a definitive patent filing date.  *See* H.R. Rep. No. 112-98, pt. 1, at 40-41 (2011).  The change also makes the U.S. patent system more compatible with the patent systems of other industrialized countries, many of which operate under a first-to-file system.  *Id*. at 41-42.[4]

Once the first-inventor-to-file provisions take effect, the filing date of the patent

---

[2] See, for example, AIA secs. 9 (venue), 10 (fee setting authority), 11(fees for patent services), 13 (funding agreements), 14 (tax strategies), and 32 (pro bono program).

[3] See, for example, AIA secs. 4 (inventor's oath or declaration), 7 (establishment of the new Patent Trial and Appeal Board), 8 (preissuance submissions by third parties), 12 (supplemental examination), and 20 (various technical amendments).

[4] For a guide to the legislative history of the AIA, see generally Joe Matal, *A Guide To The Legislative History of the America Invents Act* (pts. 1 & 2), 21 Fed. Cir. B.J. 435 (2012).

application will serve as the definitive priority date for any patent.  35 U.S.C. § 102(a), *as amended by* AIA, sec. 3(b), § 102(a), 125 Stat. at 285-86.  But the patent law continues to awards patents only to "inventors," as the AIA leaves unchanged section 101 of title 35, U.S. Code, which provides:

> [w]hoever *invents* or *discovers* any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101 (emphasis added).  Thus, in cases of competing patent claims, disputes will be resolved based upon which *inventor*'s patent application has the earlier effective filing date.  *Id.*; 35 U.S.C. § 102(a), *as amended by* AIA, sec. 3(b), § 102(a), 125 Stat. at 285-86.

The AIA also provides additional protections to ensure that only inventors are allowed to secure the right to a patent.  In cases where the invention was improperly derived—i.e., stolen—from an inventor and patented, the AIA provides for "derivation proceedings," in which the inventor can establish that the earlier filed patent was invalid and that the inventor has the right to patent the claimed invention.  35 U.S.C. § 135, *as amended by* AIA, sec. 3, § 135, 125 Stat. at 289-90.  Furthermore, in cases where an invention is stolen and disclosed to the public, the AIA provides that such disclosure will not be "prior art" that destroys the patentability of the invention, provided that the inventor files for a patent within one year of the disclosure.  35 U.S.C. § 102(b), *as amended by* AIA, sec. 3(b), § 102(b), 125 Stat. at 286. [5]  The United States Patent and Trademark Office ("USPTO") currently is in the

---

[5] "Prior art" is information that may render a claimed invention unpatentable because it is "already available to the public." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402-03 (Fed. Cir. 1997) (quoting *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed Cir. 1984) (citing 35 U.S.C. § 102)).  Prior art is available to the public, for instance, because it has been "described in the world's accessible literature, including

process of issuing regulations to implement the sections of the AIA that have yet to take effect, including the statute's first-inventor-to file provisions.[6]

**B.      Procedural History**

Plaintiffs filed their Complaint on July 18, 2012, alleging in a facial challenge that the AIA's first-inventor-to-file provisions are unconstitutional under the Patent Clause.  *See* U.S. Const., art. 1, § 8, cl. 8.[7]  In addition, Plaintiffs allege that those provisions are not severable from the remainder of the Act.  On July 31, 2012, Plaintiffs filed a motion for a preliminary injunction (Dkt. 11), seeking to enjoin Defendants from enforcing the AIA against them. Defendants filed their Opposition (Dkt. 23) on August 30.  Plaintiffs filed their Reply (Dkt. 27) on September 14.

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "'[T]he party invoking federal jurisdiction bears the burden of establishing its existence.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  "Attacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks."  *Scarfo v. Ginsberg*, 175 F.3d

---

patents, or has been publicly known or in . . . public use or on sale 'in this country.'"  *Id.* at 1402.

[6] *See, e.g.*, 77 Fed. Reg. 7028 (Feb. 10, 2012) (proposed rules for derivation proceedings, AIA, sec. 3); 77 Fed. Reg. 43,742 (July 26, 2012) (first-inventor-to-file proposed rules, AIA, sec. 3).

[7] Plaintiffs seek declaratory and injunctive relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702, 703, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Federal Rules of Civil Procedure 57 and 65.

957, 960 (11th Cir. 1999) (citation omitted).  A facial attack tests the sufficiency of the jurisdictional allegations, and those allegations are taken as true for purposes of the motion. *Id.*  A factual attack challenges "subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings" are considered.  *Id.* (citation omitted).  In a factual attack, no presumption of truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *Id.* at 960-61.  This Court must determine whether it has subject matter jurisdiction before addressing the merits of the complaint, *see Steel Co.*, 523 U.S. at 94-95, and should "presume that [it] lack[s] jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citations omitted).

Defendants also move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  As the Supreme Court recently explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the court must accept as true all factual allegations in the complaint, that tenet is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## ARGUMENT

I.   **PLAINTIFFS LACK STANDING TO CHALLENGE THE AIA'S FIRST-INVENTOR-TO-FILE PROVISIONS.**

To meet their burden to establish standing, Plaintiffs must demonstrate, *inter alia*, that they have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations omitted).  The harm must be "distinct and palpable," *Allen v. Wright*, 468 U.S. 737, 770 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)), so allegations of possible future injury do not suffice, *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  Rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Id.* (quotation omitted).  "[A] plaintiff must present specific, concrete facts showing that the challenged conduct will result in a demonstrable, particularized injury to the plaintiff." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 29 (11th Cir. 2000) (citations and quotation marks omitted).  A plaintiff who "alleges only an injury at some indefinite future time" has not shown injury in fact, particularly where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2.

Even if Plaintiffs could establish injury in fact, they would also be required to show that "the injury is fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Traceability requires that the injuries did not result "from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976).  Injuries are not traceable to the challenged provisions when they consist of voluntary action in

anticipation of some future speculative harm.  *See McConnell v. FEC*, 540 U.S. 93, 228

(2003), *overruled in part on other grounds*, *Citizens United v. FEC*, 130 S. Ct. 876 (2010).

In this case, Plaintiffs' alleged harms fall into two categories.  They first allege that

the AIA has increased the risk that their inventions might be stolen, forcing them to engage

in preventive security measures.  *See* Complaint ("Compl.") ¶¶ 29-34, 41 (Dkt. 1)

(allegations relating to theft).  They next allege that the AIA has placed additional financial

burdens on small inventors because they cannot afford to race to the patent office, and will

thus lose out to larger firms.  *See* Compl. ¶¶ 34-41 (allegations relating to racing harms).

These harms are neither concrete nor imminent and therefore do not constitute injury in fact.

They also are not traceable to the first-inventor-to-file provisions.  Plaintiffs therefore have

failed to establish standing, and this case must be dismissed for lack of jurisdiction.

### A.  The Possible Threat of Invention Theft Is Not a Concrete and Imminent Injury Traceable to the AIA's First-Inventor-To-File Provisions.

Plaintiffs claim that, under the AIA, they face an increased threat that a thief will steal

one of their inventions and file a patent application on that invention before Plaintiffs do.

*See* Compl. ¶¶ 29-34.  And, because the AIA has allegedly increased the risk of theft,

Plaintiffs claim they must maintain "heightened secrecy" by investing in enhanced computer

security systems and purchasing additional equipment and facilities to develop inventions

"in-house."  *See id.*  Plaintiffs further allege that the threat of theft has led to "reduced access

to potential investors and business partners," although their Complaint does not allege the

identity of these investors or what business opportunities have been lost.  *Id.* ¶ 41.

On the most fundamental level, Plaintiffs' theft-based allegations of injury fail to

establish injury in fact because they are premised on an incorrect reading of the AIA.  In

Plaintiffs' view, the AIA makes theft "attractive and profitable for computer hackers," Compl. ¶ 30, because the statute "no longer concerns itself with who actually invented an invention," *id.*, and makes theft "virtually impossible" to defend against, Compl. ¶ 41. Because this core contention is flatly wrong, so, too, are Plaintiffs' claims of standing.

The AIA does not sanction the award of patents to anyone but inventors.  Retained verbatim—unaltered by the AIA—section 101 continues to restrict the grant of patents to inventors.  Section 101 states:  "Whoever *invents* or *discovers* any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101 (emphasis added); *see* AIA, *passim* (no changes to § 101).  By retaining section 101, the AIA still requires as a condition of patentability that the named inventor actually invent the claimed subject matter.

Nevertheless, Plaintiffs remarkably allege that the AIA eliminates the inventorship requirement and thus will allow an individual who is not an inventor to obtain a patent.  *See* Compl. ¶ 3.  The basis of their claim is that the AIA deletes section 102(f), which provides that a person will not be entitled to a patent if he "did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f).  Plaintiffs accordingly allege that, without section 102(f), "being an inventor is no longer a condition of patentability" nor "a requirement of patent validity under Section 282 of the Patent Act," which establishes the defenses in any action involving the validity or infringement of a patent.  Compl. ¶ 17.  Plaintiffs' allegations are legally incorrect.  Both the Supreme Court and the Federal Circuit have concluded that §101—which the AIA retains—is a condition for patentability and can be used as a defense

in an action involving patent infringement and validity.  In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966), the Supreme Court stated that the 1952 Patent Act "sets out the conditions of patentability in three sections," citing 35 U.S.C. §§ 101, 102, and 103. *See also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1305 (2012) (addressing invalidity under § 101 when it was raised as a defense to a § 282 infringement claim.).  And, the Federal Circuit expressly rejected the argument—raised by the dissenting judge in the case—that § 101 is not a "condition for patentability" under § 282, stating that "the defenses provided in the statute, § 282, include not only the conditions of patentability in §§ 102 and 103, but also those in § 101." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330 n.3 (Fed. Cir. 2012) (internal quotation marks omitted) (citing *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008)).  Thus, the AIA's deletion of the redundant requirement in 35 U.S.C. § 102(f) is irrelevant, as section 101 will continue to require that a patent only be awarded to an inventor.[8]

Moreover, Plaintiffs are simply incorrect in alleging that the AIA does not provide a defense to invention theft.  Consistent with prior patent law, the AIA provides avenues both before the Patent Office as well as in federal court for an inventor to prove that a thief "derived" an invention from an inventor.  *See* AIA, secs. 3(h)–(i), §§ 135 (establishing "derivation proceedings"), 146, 291 (establishing a derivation cause of action), 125 Stat. 284,

---

[8] Plaintiffs also allege that section 3 of the AIA—which amends 35 U.S.C. §§ 102 and 103 to make priority of inventorship turn on "the effective filing date of the claimed invention"—somehow eliminates the inventorship requirement. Compl. ¶ 18.  This allegation is also without basis.  Section 3 speaks to *priority* of inventorship and neither it nor any other provision in the AIA eliminates section 101's explicit requirement that an individual must be an inventor, *i.e.* someone who "invents or discovers," in order to obtain a patent.

288-89.  Congress included derivation proceedings "to ensure that the first person to file the application is actually a true inventor" and to prevent an individual from obtaining a patent on an invention "that he did not actually invent."  H.R. Rep. No. 112-98, at 42.  In light of these provisions, any harm related to the threat of theft is purely speculative and untraceable to the AIA's first-inventor-to-file provisions.[9]

Furthermore, even if the AIA did not provide clear protections against a thief improperly securing a patent—and the AIA certainly does—Plaintiffs have alleged nothing suggesting that *their* inventions face the "real and immediate threat" of being stolen.  *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (citation and quotation marks omitted).  Plaintiffs have proffered nothing beyond the bare allegation that "computer hackers," Compl. ¶ 30, or "potential investors and business partners," *id.* ¶ 41, might steal their inventions. These hypothetical harms are not "certainly impending," *Whitmore*, 495 U.S. at 158.  Indeed, Plaintiffs have made no effort to present *any* "specific, concrete facts showing that" the first-inventor-to-file provisions "will result in a demonstrable, particularized" theft of their intellectual property.  *Miccosukee Tribe*, 226 F.3d at 1229 (quotations omitted).  Rather, Plaintiffs' alleged injuries of "the threat of IP theft," Compl. ¶ 33, are just that—Plaintiffs' speculative projections of "injury at some indefinite future time," by an unspecified third party.  *Lujan*, 504 U.S. at 564 n.2.  And Plaintiffs' allegations of unspecified "lost business opportunities" as a result of the increased risk of theft, Compl.

---

[9] In alleging that the AIA increases the risk of theft, Plaintiffs imply that competitors will *perceive* an incentive to steal inventions under the AIA.  This is groundless guesswork. Plaintiffs have alleged no facts whatsoever that such would-be thieves would find the prospect of theft more promising under the AIA.

¶ 41, are further speculations about the alleged actions of third parties.  Such contingent

conjecture does not constitute an imminent injury in fact traceable to the AIA.

Nor can Plaintiffs transform the speculative possibility of future injury into a current

concrete injury for standing purposes by asserting that they have to plan now for what might

happen in the future.  *See* Compl. ¶¶ 29-34, 41.  Such reasoning would gut the standing

doctrine.  A plaintiff could manufacture standing by asserting a present need to prepare for

the most remote and ill-defined future harms, thus eviscerating all meaning from the

imminence requirement.  Further, any planning Plaintiffs are engaged in now "stems not

from the operation of" the first-inventor-to-file provisions, "but from [Plaintiffs'] own . . .

personal choice" to prepare for contingencies that may never occur.  *McConnell*, 540 U.S. at

228.  Because Plaintiffs' theft-based allegations of injury are speculative and not "fairly

traceable" to the AIA, this case must be dismissed.  *See Lujan*, 504 U.S. at 560-61.

**B. Plaintiffs' Voluntary Decision to Spend Resources in Anticipation of a Future Race to the Patent Office Is Not a Concrete and Imminent Injury Traceable to the AIA's First-Inventor-To-File Provisions.**

Aside from the threat of theft, Plaintiffs assert that they "face increased costs and

burdens from having to operate in a First-to-File environment."  Compl. ¶ 29.  They

allegedly will have to "rush to file a patent application," instead of "wait[ing] until inventions

[are] fully developed and perform[] satisfactoril" *Id.* ¶ 36.  Plaintiffs also allege that they

face higher future costs in the form of provisional patent applications and attorneys' fees

relating thereto, in order to protect their priority date.  *Id.* ¶¶ 38-39.  If they do not file

quickly enough, Plaintiffs suggest, they will lose out to first filers, so they will have to file

provisional patent applications, followed by full applications soon thereafter.  *Id.* ¶ 40.

- 12 -

All of these harms are contingent on the speculative assumption that Plaintiffs will have to race another independent inventor to the patent office. But Plaintiffs have alleged no facts suggesting that such a race is imminent, or that a race under the AIA's first-inventor-to-file system would result in a different outcome than one under the current first-to-invent system. To do so, at a minimum, Plaintiffs would have to establish that all of the following contingencies will occur: (1) Plaintiffs' invention becomes "patentable" (2) only after the first-inventor-to-file provisions take effect in mid-March 2013; (3) Plaintiffs decide to seek a patent on that invention; (4) another party independently invents the same invention (5) after Plaintiffs have invented it; and (6) the other party files for a patent (7) before Plaintiffs do so, thereby securing the patent and foreclosing Plaintiffs' application. Plaintiffs come nowhere close to alleging that any of these contingencies, let alone all of them, will imminently occur. Indeed, Plaintiffs only claim that "[s]ome of [Mr. Stadnyk's] inventions are close to patentability but other ideas require additional research, development and testing," *id.* ¶ 28, calling into doubt whether even the first contingency above will occur. In any event, such contingent, remote, and speculative events do not rise beyond the "'conjectural' or 'hypothetical'"; they are certainly not "real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Thus, Plaintiffs simply do not allege injury in fact.

Current patent practice, moreover, suggests that the odds of a second-inventing first filer obtaining a patent over a first-inventing second filer are exceedingly rare. For instance, while there were 535,188 total patent applications in 2011,[10] there were only 64 declared

---

[10] USPTO, *U.S. Patent Statistics Chart: Calendar Years 1963-2011*, http://www.uspto.gov/web/offices/ac/ido/oeip/taf/us_stat.htm (last visited Sept. 18, 2012).

interferences[11]—the proceedings in which a patent applicant can challenge, among other things, the validity of another applicant's patent or application for a patent on the basis of priority of invention.  In other words, only in one in ten thousand cases—just over 0.01%—could someone have claimed that the prior applicant or patentee was not the first inventor.[12] Indeed, patent practice indicates that the possibility about which Plaintiffs complain almost *never* transpires.[13]

Plaintiffs also cannot establish standing by alleging they are planning now for a race to the USPTO that may never occur.  Again, such reasoning would gut standing doctrine and remove all meaning from the imminence requirement.  Further, any pre-race planning on Plaintiffs' part "stems not from the operation of" the first-inventor-to-file provisions, "but from [Plaintiffs'] own . . . personal choice" to prepare for contingencies that may never occur.  *McConnell*, 540 U.S. at 228.  Thus, Plaintiffs' alleged injuries from maybe having to one day rush to the patent office are voluntary assumptions of cost and are not "fairly traceable" to the challenged provisions.  *See Lujan*, 504 U.S. at 560.  In fact, if this Court

---

[11] USPTO, *Process Production Report:  Final Report, FY2011*, http://www.uspto.gov/ip/boards/bpai/stats/process/fy2011_sep_b.pdf (last visited Sept. 18, 2012).

[12] *See also* Donald R. Dunner, *First to File:  Should Our Interference System Be Abolished?*, 68 J. Pat. & Trademark Off. Soc'y 561, 561 (1986) ("Over the past five years, an average of more than 100,000 applications has been filed each year. . . . Of . . . 200-300 interference terminations per year, only about 25 percent have resulted in priority awards to the junior party, which reduces itself to an almost infinitesimal portion of that one percent of applications filed per year.").

[13] *See* 157 Cong. Rec. H4480-01 (daily ed. June 23, 2011) (statement of Rep. Smith) ("In the last 7 years, only one independent inventor out of 3 million patent applications filed has proved an earlier date of invention than the inventor who filed first."); Max Stul Oppenheimer, *Harmonization Through Condemnation:  Is New London the Key to World Patent Harmony?*, 40 Vand. J. Trasnat'l L. 445, 466 (2007) ("More than 99.9% of the patent applications that are currently filed in the United States raise no dispute as to the identity of the inventor.") (citation omitted).

- 14 -

accepts Plaintiffs' hypothetical injuries as sufficient for standing, it will be "deciding a case in which no injury [might] have occurred at all." *Id.* at 564 n.2.

In sum, because Plaintiffs' alleged injuries are not concrete and imminent, they lack standing to challenge the AIA. Their Complaint must therefore be dismissed for lack of jurisdiction.

## II.   THIS COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFFS' CLAIMS ARE UNRIPE FOR REVIEW.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (citation and quotation omitted). To be ripe for judicial review, a case cannot be "nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

Plaintiffs' claims are unripe for review because, at this juncture, they depend entirely on contingent future events that may not occur at all. The AIA's first-inventor-to-file provisions only apply to patent applications filed on or after March 16, 2013, AIA, sec. 3(n), 125 Stat. at 293, so no injury will occur before then. And, as discussed above, Plaintiffs have failed to allege that they will suffer an injury as a result of the first-inventor-to-file provisions when those provisions become effective.

This is not an instance of "the inevitability of the operation of a statute against certain individuals," in which case "it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions come into effect." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974). There is no "inevitability" that the AIA's first-inventor-to-file provisions will ever be applied against Plaintiffs. And it matters not that the issue may be "a purely legal question"—"for the test of ripeness . . . depends not only on how adequately a court can deal with the legal issue presented, but also on the degree and nature of the regulation's present effect on those seeking relief." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967). The AIA's first-inventor-to-file provisions have no "present effect" on Plaintiffs. Instead, should they face the imminent prospect of losing a race to the patent office, Plaintiffs "will have ample opportunity later to bring [their] legal challenge at a time when harm is more imminent and more certain." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998). But at this point, this case is unripe and must be dismissed for lack of jurisdiction.

## III.   THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM.

Plaintiffs claim that the AIA violates the Patent Clause of the Constitution by "award[ing] patents not to the actual inventor but to the first party to file." Compl. ¶ 41, *see id.* ¶¶ 2-5. In Part II of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 23, at 19-32), Defendants explained why Plaintiffs were not substantially likely to prevail on their constitutional challenge. For the same reasons stated therein and the reasons stated below, Plaintiffs have failed to state a claim upon which relief can be granted. This Court must therefore dismiss this case.

**A. Plaintiffs' Facial Challenge to the AIA's First-Inventor-To-File Provisions Fails Because They Cannot Show That The AIA Will Operate Unconstitutionally In Most Cases.**

Plaintiffs claim that the AIA is facially unconstitutional because it may allow a second inventor to obtain a patent in lieu of a first inventor. "To succeed in a typical facial attack," plaintiffs must "establish 'that no set of circumstances exist under which [the challenged law] would be valid," *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), "that the statute lacks any 'plainly legitimate sweep,'" *id.* (citation omitted), or, at a bare minimum, "that the statute at issue would be [un]constitutional as applied in a large fraction of cases," *Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1175 (1996) (Stevens, J., concurring in the denial of certiorari).

Plaintiffs come nowhere close to alleging that the AIA is invalid in all, most, or even many, circumstances—that is, under any of the Supreme Court's tests. Plaintiffs claim that the AIA will operate unconstitutionally by allowing a second-in-time inventor to obtain a patent that should belong to the first-in-time inventor. Assuming, *arguendo*, that Plaintiffs' constitutional interpretation is correct—and it certainly is not, *see infra* Section III.B— Plaintiffs' facial challenge relies on two dubious factual assumptions, both of which must be true for the AIA to operate in an allegedly unconstitutional fashion. First, two individuals must independently create the same invention *in most circumstances*. And, the second inventor must be the first to file a patent application *in most circumstances*. Plaintiffs, however, do not allege that these facts will occur in most cases. Moreover, as a historical matter, first inventors have challenged priority of inventorship in only 0.01% of cases. *See*

*supra* Section I.B.  Such a small chance that a patent will be awarded to a subsequent

inventor does not comprise "a large fraction of cases" (the standard most charitable toward

Plaintiffs).  *Janklow*, 517 U.S. at 1175 (Stevens, J., concurring in the denial of certiorari).

Therefore, Plaintiffs facial challenge to the constitutionality of the AIA must fail.[14]

> **B.  The First-Inventor-To-File Provisions of the AIA Are Constitutional in All Cases.**

The federal patent power stems from Article I, Section 8, Clause 8 of the United

States Constitution.  *Graham*, 383 U.S. at 5-6.  The Patent Clause provides that

> Congress shall have the power . . . [t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

U.S. Const. art. I, § 8, cl. 8.  "Within the limits of the constitutional grant, the Congress

may . . . implement the stated purpose of the Framers by selecting the policy which in its

judgment best effectuates the constitutional aim."  *Graham*, 383 U.S. at 6.  This power

extends to "set[ting] out conditions and tests for patentability."  *Id.* (citing *McClurg v.*

*Kingsland*, 42 U.S. (1 How.) 202, 206 (1843)) ("[T]he powers of Congress to legislate upon

the subject of patents is plenary by the terms of the Constitution, and . . . there are no

restraints on its exercise . . . .").  Further, when deciding whether legislation is permissible

under the Patent Clause, courts grant substantial deference to Congress's policy

determinations.  *Figueroa v. United States*, 466 F.3d 1023, 1031-32 (Fed. Cir. 2006) (citing

---

[14]  Plaintiffs do not state an as-applied challenge.  As the Eleventh Circuit has noted, "an as-applied challenge in a pre-enforcement review of a statute that has yet to be applied" is an "inherent contradiction." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1255 n.20 (11th Cir. 2012).  If such a challenge is even possible, "a plaintiff's complaint must include all of the factual allegations necessary to clearly illustrate the context in which the statute will be applied."  *Id.*  Plaintiffs have clearly failed to do that here.

- 18 -

*Graham*, 383 U.S. at 6).  Accordingly, judicial review of legislation enacted pursuant to the

Patent Clause is limited to determining whether Congress's actions were a "rational exercise

of legislative authority."  *See Eldred v. Ashcroft*, 537 U.S. 186, 204-05 (2003); *id.* at 218

("The Copyright [and Patent] Clause . . . empowers Congress to *define* the scope of the

substantive right.") (emphasis in original).

     Plaintiffs contend that the first-inventor-to-file system of the AIA violates the Patent

Clause because it will award patents to the "person who is first to file a patent application"

and not the "actual first inventor of the technology in question."  Compl. ¶ 3.  This legal

conclusion is without basis.  The AIA explicitly requires that an individual be an "inventor"

of a "discovery" in order to obtain a patent.  35 U.S.C. § 101; *see supra* at 4-5.  In fact,

section 101's restriction of patents to inventors is retained verbatim by the AIA.  In addition,

the AIA provides for derivation proceedings, and a derivation cause of action, to ensure that,

in the event of a dispute, the first person to file the patent application is actually an inventor.

*See* AIA, sec. 3, §§ 135, 146, 291, 125 Stat. at 288-90.  The Patent Trial and Appeal Board

has the authority to "correct the naming of the inventor" if it finds that "an inventor named in

the earlier application derived the claimed invention" from the actual inventor.  *Id.* § 135(b),

125 Stat. at 289.  Thus, in light of these provisions, the AIA is clearly consistent with the

basic principle, in existence since 1790, that "rights in an invention belong to the inventor."

*Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Sys.*, 131 S. Ct. 2188,

2190 (2011).

     Plaintiffs erroneously dismiss these key elements of the AIA as nothing more than a

"smokescreen."  Compl. ¶ 3.  In their view, the only person who can constitutionally qualify

as an "Inventor" is the first person to conceive of the invention, even if that inventor never discloses the invention and another person then independently conceives of and develops the invention. *See* Compl. ¶ 20 ("A second 'inventor' is an oxymoron; that person merely rediscovers that which was already discovered by the first inventor.").[15]  But nowhere does the Constitution constrain Congress to granting patents only to first inventors.  Plaintiffs' constitutional interpretation is not supported by the text of the Patent Clause, the purpose of the patent system, or the history or current operation of the patent system.

As a textual matter, the Patent Clause does not require Congress to grant patents to "first Inventors," but rather only to "Inventors."  Nor does the Patent Clause specify any mechanism for determining priority between competing inventors who independently invent something using their own hard work and ingenuity.  Instead, as the Supreme Court has long recognized, Congress has broad authority under the constitution to "set out conditions and tests for patentability," *Graham*, 383 U.S. at 6 (citing *McClurg v. Kingsland*, 42 U.S. (1 How.) 202, 206 (1843)).  With the AIA, Congress has exercised that power in establishing the condition that the effective filing date shall determine priority of invention when two inventors claim the same discovery.

Plaintiffs' citations to the dictionary definitions of "Inventor" and "Discovery" during

---

[15]  Plaintiffs do not clearly allege the moment at which an inventor becomes an inventor for constitutional purposes.  Plaintiffs imply that an invention is entitled to constitutional protection the moment the individual thinks of it.  *See* Compl. ¶ 36.  That is, once the "light-bulb" moment occurs, Plaintiffs suggest that a constitutional line has been drawn, and Congress may grant the patent to no one else, even though the idea has not been reduced to practice, disclosed, or sold by the individual who initially had the idea. *See id.* ("Under the prior first-to-invent system, Plaintiffs were able to diligently proceed to reduce their inventions to practice, without having to rush to file a patent application.").  As discussed below, this view finds no support in the text, purpose, and history of the Patent Clause.

the Founding Era also do not show that Congress is limited to granting patents only to the first inventor.  Plaintiffs claim that an "Inventor" was "[o]ne who produces something new; a devisor of something not known before."  Compl. ¶ 20.  They also claim that a "discoverer" was defined as "one who finds anything unknown before."  *Id.*  But nothing in these definitions suggests that only the first person to conceive of an idea can be an inventor.  Two people can independently "find[] any thing hidden" or "produce[] something new" or "not known before."  Furthermore, Plaintiffs' cramped reading of the words "new" and "not known" is inconsistent with the purpose of the patent laws and has long been rejected by Congress and the federal courts.  As the Supreme Court explained more than 150 years ago, "[K]nowledge and use . . . mean[] knowledge and use existing in a manner accessible to the public," as opposed to "new" or "not known" to some other prior inventor who has not yet disclosed.  *Gayler v. Wilder*, 51 U.S. (10 How.) 477, 497-98 (1850); *see also Kendall v. Winsor*, 62 U.S. (21 How.) 322, 328 (1858) (emphasizing "the relation borne to the public by inventors"); *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390, 400 (1926) ("In view of the gain to the public that the patent laws mean to secure . . . it would have been no bar to Whitford's patent if Clifford had written out his prior description and kept it in his portfolio uncommunicated to anyone.").

The importance of public disclosure of an invention inheres in the Patent Clause itself, which empowers Congress "to promote the Progress of Science and useful Arts."  U.S. Const. art. I, § 8, cl. 8; *Graham*, 383 U.S. at 6.  As the Supreme Court has repeatedly explained, "reward to the owner [is] a secondary consideration," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984) (citation omitted), because "the

ultimate goal of the patent system is to bring new designs and technologies *into the public domain through disclosure*." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151 (1989) (emphasis added).  The patent system thus stipulates "the reward" of a patent in exchange "for the advantages derived by the public" in the form of new knowledge.  *Grant v. Raymond*, 31 U.S. (6 Pet.) 218, 241-42 (1832) (Marshall, C.J.).  But the public benefits only when the inventor discloses:  "If an inventor should be permitted to hold back from the knowledge of the public the secrets of his invention; . . . it would materially retard the progress of science and the useful arts; and give a premium to those who should be least prompt to communicate their discoveries."  *Pennock v. Dialogue*, 27 U.S. (2 Pet.) 1, 19 (1829) (Story, J.).  Such a withholding inventor "comes not within the policy or objects of the Constitution or acts of Congress."  *Kendall*, 62 U.S. (21 How.) at 328.

In order to achieve public disclosure of new ideas, "the federal patent system . . . embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years."  *Bonito Boats*, 489 U.S. at 151-52.  Considering that public disclosure has foundational importance to our patent system and is grounded in the text of the Patent Clause, Plaintiffs' argument that Congress may constitutionally grant a patent only to the first inventor, who may delay in disclosing his invention to the public, falls flat.  In the AIA, Congress decided that, when two individuals independently invent the same thing, the rule of priority should favor the inventor who discloses first by filing a patent application.  That priority determination is fully authorized by the Patent Clause.

Plaintiffs are also incorrect in alleging that, since the Founding Era, the U.S. patent

system has "operated according to the Constitution's premise that only *the first* actual

inventor of a discovery is entitled to a patent."  Compl. ¶ 26 (emphasis added).  To the

contrary, the Supreme Court, and other courts, have long concluded that a person who is

second to invent still qualifies as an inventor and may, under certain circumstances, be

entitled to the patent.  *See Gayler*, 51 U.S. (10 How.) at 495-97 (finding individual's patent

to be valid even though he was "not strictly speaking the first and original inventor" because

"he discovered it by the efforts of his own genius, and believed himself to be the original

inventor."); *Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275,

292 (1892) (holding that even if others invented the claimed barbed wire first, "it was

Glidden, beyond juestion [sic], who first published this device, put it upon record, made use

of it for a practical purpose, and gave it to the public, by which it was eagerly seized

upon . . . . Under these circumstances we think the doubts we entertain concerning the actual

inventor of this device should be resolved in [his] favor."); *Kendall*, 62 U.S. (21 How.) at

328 ("[T]he inventor who designedly . . . withholds his invention from the public, comes not

within the policy or objects of the Constitution or acts of Congress."); *Mason v. Hepburn*, 13

App. D.C. 86, 94 (D.C. Cir. 1898) (holding that the second of two inventors "must be held to

be the first inventor in the sense of the law regulating the grant of patents" where the first

inventor concealed his invention from the public); *Young v. Dworkin*, 489 F.2d 1277, 1282-

83 (C.C.P.A. 1974) (Rich, J., concurring) ("[F]or at least a century [the patent system] has

been a qualified first-to-invent system.  The de facto first inventor has not necessarily been

adjudged to be the de jure first inventor.").  Thus, there is no merit to Plaintiffs' allegation

that "inventor" meant "first inventor" at the time the Patent Clause was adopted.[16]

Building on over a century and a half of judicial precedent, the current (pre-AIA) patent system permits a second inventor to obtain a patent under "certain circumstances." *Brunswick Corp. v. United States*, 34 Fed. Cl. 532, 583 (Fed. Cl. 1995).; s*ee* 35 U.S.C. § 102 (allowing grant of patent to second inventor if first inventor "abandoned, suppressed, or concealed" invention); 35 U.S.C. § 102(g)(2) (allowing grant of patent to second inventor if first inventor did not diligently reduce invention to practice); 35 U.S.C. § 102(b) (allowing second inventor to obtain patent on invention "in public use" in foreign countries).  If Plaintiffs' interpretation of the Patent Clause is correct—that "inventor" constitutionally means "first inventor"—then the current patent system, and more than a century and a half of judicial precedent, are likewise unconstitutional.  The proper view of the Patent Clause is that Congress may constitutionally grant patents to "inventors" and impose "conditions and tests," *Graham*, 383 U.S. at 6 (citation omitted), to determine who, among competing inventors, is entitled to a patent as a matter of priority.  In the AIA, Congress required that an inventor who independently conceives of and develops an idea must be the first to file the

---

[16]  Plaintiffs are correct that, *as a statutory matter*, the first inventor was entitled to the patent over a subsequent inventor in several early cases.  *See, e.g., Evans v. Eaton*, 16 U.S. (3 Wheat.) 454, 513-14 (1818) (Marshall, C.J.) and *Pennock*, 27 U.S. (2 Pet.) at 23 (Story, J.).  But that does not mean the Patent Clause *constitutionally* prohibits Congress from granting patents to second inventors.  Indeed, two people can both qualify as "inventors," even if only one is entitled to the patent as a matter of statutory priority. *See, e.g.*, *Bedford v. Hunt*, 3 F. Cas. 37, 38 (C.C.D. Mass. 1817) ("The *first inventor*, who has put the invention in practice, and he only, is entitled to a patent.  Every *subsequent* patentee, *although an original inventor*, may be defeated of his patent right upon proof of such prior invention being put into use.  The law in such case cannot give the whole patent right to *each inventor*, even if each be equally entitled to the merit of being an original and independent inventor; and it therefore adopts the maxim, '*qui prior est in tempore, potior est in jure*.'") (emphasis added).

patent application to receive priority over another inventor.  That legislative judgment is fully

authorized by the Patent Clause.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this case for lack of jurisdiction.

In the alternative, this Court should dismiss this case for failure to state a claim upon which

relief can be granted.[17]

Respectfully submitted,

| | |
|---|---|
| RAYMOND T. CHEN | STUART F. DELERY |
| Solicitor | Acting Assistant Attorney General |
| | |
| SCOTT C. WEIDENFELLER | JOHN R. GRIFFITHS |
| AMY J. NELSON | Assistant Branch Director |
| Associate Solicitors | United States Department of Justice |
| U.S. Patent & Trademark Office | Civil Division, Federal Programs Branch |
| | |
| | /s/Scott D. Levin |
| | SCOTT D. LEVIN |
| | /s/Matthew A. Josephson |
| | MATTHEW A. JOSEPHSON |
| | Trial Attorneys |
| | United States Department of Justice |
| | Civil Division, Federal Programs Branch |
| Dated:  September 18, 2012 | *Counsel for Defendants*[†] |

---

[17]  Plaintiffs' Complaint has two counts.  Count One alleges that the AIA's first-inventor-to-file provisions are unconstitutional.  Count Two alleges that, if those provisions are declared unconstitutional, then the AIA must be struck down in its entirety because the challenged provisions are not severable from the rest of the act.  Because the dismissal of Count One requires the dismissal of Count Two, Defendants ask this Court to dismiss the entire case.

[†] Counsel for the United States gratefully acknowledge the contributions of law student intern Parker Rider-Longmaid (University of Pennsylvania Law School, Class of 2013) in preparing this brief.